## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONNA MAE REPSHER,** | : | **Civil No. 1:19-CV-1718** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

### I.    <u>INTRODUCTION</u>

It is a cardinal principle of judicial review in Social Security appeals that "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)." <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999). The instant case aptly illustrates this principle.

In the instant Social Security appeal, we are asked to consider whether an Administrative Law Judge (ALJ) sufficiently examined the constellation of mental, emotional and physical impairments confronting the Plaintiff, Donna Mae Repsher, before denying her application for social security benefits. Specifically, we must determine whether the ALJ's decision denying Ms. Repsher benefits is supported by

substantial evidence when that evidence reveals that the plaintiff had long experienced significant cognitive impairments, but the ALJ largely discounted these impairments at Step 2 of the sequential analysis which applies to Social Security disability claims based upon a state agency medical opinion which misstated and understated the nature, and extent, of these impairments.

Upon consideration, we find that the ALJ did not sufficiently consider Ms. Repsher's cognitive impairments at step two of the five-step sequential analysis that must be undertaken in these cases, and the absence of any further meaningful discussion regarding these impairments at subsequent steps in this sequential analysis renders the remainder of the ALJ's decision infirm and incapable of adequate review by this Court. Mindful of the fact that an ALJ "cannot reject evidence for no reason or for the wrong reason," Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993), for the reasons discussed below, we conclude that this failure of articulation in the instant case compels a remand for further consideration of this case by the Commissioner.

## II.   **BACKGROUND**

Donna Mae Repsher filed for disability benefits under Title II of the Social Security Act on September 29, 2016. (Tr. 12). In her disability claim, Ms. Repsher indicated that she was disabled due to a combination of physical and mental impairments, including degenerative disc disease, asthma, obesity, anxiety and

learning disorders. (Tr. 83, 142). At the time of her disability claim  Ms. Repsher,

who was born in August 1972, was in her mid-40s. (Tr. 22). She had a high school

education and had previously been employed as a cook and a flagger. (Id.)

Ms. Repsher's disability claim rested, in part, upon her claim that she suffered

from learning disabilities. Repsher's learning disabilities were longstanding and

long documented. When Repsher was 19 ½ years old she was evaluated by a school

psychologist. At that time, Repsher was identified as a 19 ½ year old senior who

"presently receives services of an academic learning support resource room in view

of a specific learning disability." (Tr. 191). Thus, Repsher was enrolled in special

education programs throughout her education. Repsher reaffirmed at her ALJ

disability hearing that she attended special education classes throughout her

elementary and high school career. (Tr. 61). Repsher was assessed as having a

borderline to low average IQ of 78. (Tr. 192). At age 19, Repsher read at a fourth-

grade level, spelled at a third-grade level, and had math skills commensurate with a

seventh-grade education. (Tr. 193). Consequently, Repsher was identified by

schools officials and counsellors as "mentally retarded." (Tr. 196).

Despite this uncontradicted record that Repsher suffered from learning

disabilities, a state agency expert, Dr. Paul Taren, concluded in February of 2017

based solely upon a medical record review that Repsher experienced no severe

mental impairments. (Tr. 87). Dr. Taren's summary assessment is noteworthy both

for what it misstates and fails to state regarding Repsher's intellectual impairments. While the doctor's report acknowledged that Repsher claimed to have a learning disability (Tr. 86), it did not expressly evaluate that learning disability. Instead, Dr Taren only considered Repsher's anxiety as a potentially disabling condition and found that her anxiety was not severe.

Dr. Taren's summary report also failed to mention many factors relating to Repsher's learning disabilities. Thus, Dr. Taren did not mention Repsher's IQ of 78, her limitations in terms of reading, spelling or math, or the school's characterization of Repsher as mentally retarded. Moreover, the only fleeting reference to Repsher's schooling set forth in Dr. Taren's report misstated her academic experience. The report erroneously stated that Repsher was a: "high school grad, reg ed." (Tr. 87). This statement was incomplete and incorrect. While Repsher had graduated from high school, she did not attend regular classes. Quite the contrary, it is undisputed that Repsher was enrolled in special education programs throughout her education. (Tr. 61, 191).

Despite this evidence relating to Repsher's learning disabilities, her application for disability benefits was denied by the ALJ on October 23, 2018. (Tr. 12-24).  In the decision denying this application for benefits, the ALJ first found that Repsher  met the insured requirements of the Act through December 31, 2016. (Tr. 14).  At Step 2 of the five-step sequential analysis process that applies to Social

Security disability claims, the ALJ concluded that Repsher had several severe impairments including degenerative disc disease, asthma, and obesity. (Tr. 15). The ALJ concluded, however, that none of Repsher's intellectual and emotional impairments met the Act's minimal standards at Step 2 of the sequential analysis which applies to disability claims for consideration as severe impairments. (Id.) In reaching this conclusion, the ALJ afforded Dr. Taren's report "great weight" without addressing the fact that the reported misstated and failed to acknowledge evidence which supported a finding that Repsher's learning disabilities were significant and severe. Thus, we cannot discern whether the ALJ considered, or even recognized, the contradictions between Dr. Taren's report and the underlying medical evidence.

Having discounted these intellectual impairments at Step 2, the ALJ then focused almost exclusively upon Repsher's physical limitations when analyzing this claim. Thus, the residual functional capacity assessment crafted by the ALJ contained no intellectual limitations, and the medical evidence analysis conducted in support of the RFC evaluation addressed Repsher's physical, rather than intellectual, impairments. (Tr. 19-22). On the basis of this analysis, which discounted Repsher's intellectual impairments at the outset relying upon an expert report that did not accurately described those impairments, the ALJ concluded at Step 5 of this sequential analysis that Repsher could perform work in the national economy and denied here claim. (Tr. 22-24).

This appeal followed. (Doc. 1). This matter is fully briefed and is, therefore, ripe for resolution. Upon consideration of the parties' competing positions, we find that the failure to fully assess Repsher's learning disabilities, and the reliance on an expert report that misstated the evidence when discounting these intellectual impairments, compels a remand of this case for further consideration by the Commissioner.

## III.   <u>DISCUSSION</u>

### A.   <u>Standard of Review-The Roles of the ALJ and this Court</u>

Resolution of the instant social security appeal involves consideration of the respective roles of two adjudicators—the ALJ and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C.

§1382c(a)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the ALJ must sequentially determine whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment; (4) the claimant is able to do his or her past relevant work; and (5) the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920(a)(4).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Notably, the Third Circuit Court of Appeals has recognized that the burden placed on an applicant at step two of this process is not exacting, and that "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856, at *3).

Once the ALJ makes a disability determination, it is then the responsibility of

this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

"In determining if the Commissioner's decision is supported by substantial

evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether a plaintiff is disabled, but whether the Commissioner's finding that the claimant is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 U.S. Dist. LEXIS 31292 at *1 (M.D. Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id.</u> at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

On this score one other rule applies. When evaluating the legal sufficiency of an ALJ decision it is axiomatic that that "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)." <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999). Accordingly, we should remand for further consideration whenever the record reveals that evidence was discounted by the ALJ for the wrong reason or no reason.

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

These principles apply with particular force to an ALJ's Step 2 determinations. Step 2 of this sequential analysis is often the first substantive benchmark an ALJ must address and is governed by familiar legal standards:

10

With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms: "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p, 85–28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimus* screening device to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec.,370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec*.,* 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.' Id*."* Velazquez v. Astrue*,* No. 07–5343, 2008 WL 4589831, *3 (E.D.Pa., Oct.15, 2008). Thus, "[t]he claimant's burden at step two is 'not an exacting one.' McCrea v. Comm'r of Soc. Sec*.,* 370 F.3d 357, 360 (3d Cir.2004). This step should be 'rarely utilized' to deny benefits. Id. at 361. Rather, ... [a]n individual should be denied benefits at step two only if the impairment he presents is a 'slight abnormality' that has 'no more than a minimal effect on [his] ability to work.' Id*."* Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 469–70 (3d Cir.2007). Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea v. Commissioner of Social Sec*.,* 370 F.3d 357, 360 (3d Cir.2004).

Dotzel v. Astrue, No. 1:12-CV-1281, 2014 WL 1612508, at *4 (M.D. Pa. Apr. 22, 2014). Furthermore,

> [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. See Nosse v.

11

Astrue, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D.Pa. Sept.17, 2009).

McClease v. Comm. of Soc. Sec., No. 8–CV–1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); see also Salles v. Comm. of Soc. Sec., 229 Fed. App'x 140, 145, n. 2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

Stouchko v. Comm'r of Soc. Sec., No. 1:12-CV-1318, 2014 WL 888513, at *10 (M.D. Pa. Mar. 6, 2014). Simply put, "because step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 361 (3d Cir. 2004) (citing SSR 85–28, 1995 WL 56856, at *4 ('Great care should be exercised in applying the not severe impairment concept')).

Likewise where there is a flawed analysis of a cognitive impairment remand is appropriate whenever the reviewing court cannot determine whether the ALJ's decision is supported by substantial evidence. See, e.g., Jerro v. Colvin, No. CV 15-3775-DFM, 2016 U.S. Dist. LEXIS 86855, at *9 (C.D. Cal. July 5, 2016) (remanding SSI appeal because "the ALJ failed to explicitly address or provide specific and legitimate reasons for rejecting the treating physicians' diagnosis about Plaintiff's schizoaffective disorder."); Childs v. Colvin, No. 1:14-CV-00462 (MAT), 2016 U.S. Dist. LEXIS 37840, at *9-*10 (W.D.N.Y. Mar. 23, 2016) ("The ALJ's failure to consider plaintiff's schizoaffective disorder at both steps two and three of the

sequential evaluation process constituted reversible error because a full consideration of plaintiff's disorder could have affected the outcome of her application."); Johnson v. Colvin, No. 3:13-cv-301, 2014 U.S. Dist. LEXIS 162255, at *24-*25 (S.D. Ohio Nov. 19, 2014) (remanding SSI claim because the ALJ failed to address plaintiff's diagnosis of schizoaffective disorder, which occurred after plaintiff filed her initial SSI claim, and noting that "[r]egardless of whether [the diagnosis] was a severe impairment or not, the ALJ's failure to consider all of Plaintiff's mental impairments when assessing Plaintiff's residual functional capacity constituted error."); Sykes v. Colvin, No. CV 12-1171, 2013 U.S. Dist. LEXIS 122243, at *4-*5 (C.D. Cal. Aug. 26, 2013) (remanding SSI claim because ALJ did not consider medical records containing a diagnosis of schizoaffective disorder, which plaintiff filed after an administrative hearing); Nosse v. Astrue, No.: 08-cv-1173, 2009 U.S. Dist. LEXIS 84944, at *45-45 (W.D. Pa. Sept. 17, 2009) ("Until the ALJ explains why plaintiff's mental conditions are not severe . . . and provides reasons for rejecting [doctor's] diagnoses and opinions, the court is unable to determine whether the ALJ's RFC determination is supported by substantial evidence.").

It is against these legal guideposts that we assess Repsher's case.

**B.    This Case Should be Remanded for Further Assessment of the Plaintiff's Cognitive Disorder**

In this case, the ALJ determined at Step 2 of the five-step sequential analysis

that applies to Social Security cases that Repsher suffered from some severe physical impairments. However, notably absent from this decision was any recognition of Repsher's significant intellectual limitations. In concluding that Repsher suffered from no severe mental impairments, the ALJ gave great weight to the summary report of the state agency expert, Dr. Taren. But, as we have noted, Dr. Taren's summary assessment was noteworthy both for what it misstated and failed to state regarding Repsher's intellectual impairments. While the doctor's report acknowledged that Repsher claimed to have a learning disability (Tr. 86), it did not expressly evaluate that learning disability. Instead, Dr Taren only considered Repsher's anxiety as a potentially disabling condition and found that her anxiety was not severe. Further, this summary report failed to mention many factors relating to Repsher's learning disabilities, including her IQ of 78, her limitations in terms of reading, spelling or math, or the school's characterization of Repsher as mentally retarded. Moreover, the only passing reference to Repsher's schooling set forth in Dr. Taren's report incorrectly stated that she was a "high school grad, reg ed." (Tr. 87). This statement was both incomplete and incorrect. While Repsher had graduated from high school, she did not attend regular classes. Quite the contrary, it is undisputed that Repsher was enrolled in special education programs throughout her education. (Tr. 61, 191).

In our view, more is needed here before significant intellectual impairments

may be wholly discounted at Step 2. Rather, we believe that the ALJ erred in failing

to identify Repsher's learning disabilities as severe in Step 2 of the five-step

analytical paradigm that governs this social security appeal. On this score, it is well-

settled that this Step 2 inquiry is a "*de minimus* screening device to dispose of

groundless claims." McCrea v. Comm. of Soc. Sec.*,* 370 F.3d 357, 360 (3d Cir.

2004); Newell v. Comm. of Soc. Sec.*,* 347 F.3d 541, 546 (3d Cir. 2003).

Accordingly, "[a]ny doubt as to whether this showing has been made is to be

resolved in favor of the applicant," id.; the claimant's burden at step two is "not an

exacting one," id.; and this step should be "rarely utilized" to deny benefits.  Id. at

361. Further, "the Commissioner's determination to deny an applicant's request for

benefits at step two should be reviewed with close scrutiny." Id. at 360. As part of

this "close scrutiny," it is clear that we cannot sustain a step two benefit denial

decision that rests upon an ALJ's erroneous reliance upon an expert opinion which

misstated the evidence. Similarly, at this initial stage in the disability benefit review

process, an ALJ errs if the ALJ makes an adverse step two determination, but fails

to address some material evidence in the record which supports that disability claim.

See Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 470 (3d Cir. 2007).

Here, there was significant, material evidence which indicated that Repsher

suffered from severe learning disabilities. Her educators had characterized her as

mentally retarded, testing had revealed that she had a borderline IQ, she had been

schooled in special education classes, and her reading, writing and math skills were far below her age level. Given the *"de minimus"* nature of the claimant's burden at Step 2, acknowledging that  "[a]ny doubt as to whether this showing has been made is to be resolved in favor of the applicant," and accepting that the claimant's burden at step two is "not an exacting one," McCrea, 370 F.3d at 360, we believe that the ALJ erred in not considering this mental condition to be either determinable or severe at Step 2.

Furthermore, this error then appears to have affected the ALJ's subsequent analysis of this claim. Having prematurely discounted this mental impairment at Step 2, the ALJ then failed to meaningfully consider the cumulative effect of this mental limitation and the plaintiff's other impairments at step 5 of the evaluation process or when formulating Repsher's residual functional capacity. Moreover, this failure to further address this diagnosed condition in formulating Repsher's residual functional capacity was unexplained by the ALJ's decision. "In the absence of such an [explanation,] the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)  Therefore, a remand to reconsider, and expressly address, the cumulative effects of these intellectual impairments upon Repsher's residual functional capacity is warranted in this case.

Yet, while case law calls for a remand and further proceedings by the ALJ in

this case assessing this claim in light of this evidence nothing in our opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore, nothing in this opinion should be deemed as expressing a view on what the ultimate outcome of any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED for further consideration of the Plaintiff's application.

An appropriate order follows.

Submitted this 21st day of April 2020.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge